**John DOE, Plaintiff,**

v.

**Jack TERHUNE, as successor to William H. Fauver, et al., Defendants.**

**No. CIV. A. 96–6099.**

United States District Court, D. New Jersey.

Nov. 28, 2000.

774

Fredric J. Gross, Fredric J. Gross Law Firm, Mount Ephraim, NJ, William H. Buckman, Moorestown, NJ, for Plaintiff.

John J. Farmer, Jr., Attorney General of New Jersey by Gregory A. Spellmeyer, Deputy Attorney General Trenton, NJ, for Defendants Jack Terhune and Victor D'Ilio.

## OPINION

RODRIGUEZ, District Judge.

This matter is before this court on the motion of plaintiff John Doe for costs and attorneys' fees in the amount of $65,495.63. For the reasons contained herein, the motion will be granted in part and denied in part.

### I. BACKGROUND

On December 31, 1996, plaintiff filed an emergency application seeking to prevent the New Jersey Bureau of Parole from notifying his employer of plaintiff's parole status following a sexual offense conviction. Invoking federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343(a), plaintiff sued for equitable relief under 42 U.S.C. § 1983. This court granted a temporary restraining order on notice and, on December 29,1997, granted a preliminary and permanent injunction.

Defendants appealed to the Third Circuit Court of Appeals, fully arguing and briefing the appeal. During the pendency of the appeal, the injunction remained in force.

While awaiting a ruling from the Third Circuit, plaintiff's period of parole ended. Plaintiff notified the Third Circuit that the period of parole ended, suggesting that the Third Circuit find the appeal moot. Over defendants' objection, that the appeal fell within the capable of repetition yet evading review exception to the mootness doctrine, the Third Circuit dismissed the appeal for mootness on April 20, 1999.

After the dismissal, plaintiff filed with the Third Circuit a consolidated application for costs including attorneys' fees covering all services. Defendant opposed the application. On August 30, 2000, the Third Circuit denied the application without prejudice to an application for a fee allowance in this court. On September 19, 2000, plaintiffs filed the present application for costs including attorneys' fees for work both at the district court level and on the appeal. Defendant opposes the application in its entirety and, alternatively, opposes the amount of fees requested.

### II. DISCUSSION

Title 42 U.S.C. § 1988 provides that, in federal civil rights actions, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." A court's assessment of a fee application under § 1988 involves a three-step analysis. As a threshold matter, a plaintiff must qualify as a "prevailing party" within the meaning of the statute. Next, the court must calculate the "lodestar" by multiplying the reasonable hourly rate by the number of hours reasonably expended on the litigation. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Finally, the court must determine whether the lodestar requires an adjustment "to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." *Dillard v. Greensboro,* 213 F.3d 1347, 1353 (11th Cir.2000) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

A fee applicant bears the burden of proving with satisfactory evidence the reasonableness of the amount requested. *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. Although a district court has broad discretion in determining the amount of an award, it must articulate the reasons underlying its decisions to allow for appellate review. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 199–200 (3d Cir.2000); *Daggett v. Kimmelman,* 811 F.2d 793, 797 (3d Cir.1987).

Defendants argue that, as a preliminary matter, plaintiff failed to file his application for attorneys' fees for work done in this court within the time required by Federal Rule of Civil Procedure 54 and Local Civil Rule 54.2. Defendants next argue that plaintiff did not acquire "prevailing party" status in the appeal of this court's injunction, thus he cannot recover attorneys' fees for work performed at the appellate level. Finally, defendants contend that, if this court grants plaintiff any attorneys' fees, it must reduce the fees requested by plaintiff.

## A. Work Performed at the District Court Level

■ For the reasons contained herein, the portion of plaintiff's motion for attorneys' fees for work performed before this court will be denied.

Under Federal Rule of Civil Procedure 54, a prevailing party must file a motion for attorneys' fees "no later than 14 days after entry of judgment," unless statute or order of the court modify the time. See Fed.R.Civ.P. 54(d)(2)(B). The advisory committee notes to the 1993 amendments to Federal Rule 54 explain the rational for imposing a time requirement.

> One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed. . . .

> Prompt filing affords an opportunity for the court to resolve fee disputes shortly after the trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.

Fed.R.Civ.P. 54 Advisory Comm. Notes to 1993 Amends.

The Local Civil Rules for the District of New Jersey modify the 14–day time requirement in Federal Rule 54.2.

> In all actions in which a counsel fee is allowed by the Court or permitted by statute, an attorney seeking compensation for services or reimbursement of necessary expenses shall file with the Court an affidavit within 30 days of the entry of judgment or order, unless extended by the Court. . . .

L. Civ. R. 54.2(a).

Defendants argue that Federal Rule 54 and, thus, Local Rule 54.2(a) require plaintiff to file his request for attorneys' fees under § 1988 within 30 days of this court's issuing the permanent injunction. At the latest, that date was February 14, 1998.[1] Because the plaintiff did not file this application for costs including attorneys' fees until September 19, 2000, defendants contend that Local Rule 54.2 bars plaintiff from seeking attorneys' fees for work performed before this court.

On the other hand, plaintiff argues that the filing of an appeal should work to toll the 30–day time period in Local Rule 54.2. Defendants filed an appeal of the injunction 8 days after this court's clarification that the December 27, 1997 order was a permanent injunction. That, plaintiff contends, would leave him 22 days following final disposition by the Third Circuit in which to file his application for costs including attorneys' fees. The Third Circuit dismissed the fee application on August 30, 2000, and plaintiff filed this instant application on September 19, 2000. Thus, under plaintiff's proposed reading of Local Rule 54.2, the application was filed within the 30–day time requirement, with 2 days to spare.

This court must discern the meaning of its own rules. See 12 Charles Alan Wright, Arthur R. Miller & Richard L.

---

**1.** While this court issued the injunction on December 29, 1997, it was by order dated January 15, 1998 that this court clarified that the injunction was to be read as a permanent injunction.

Marcus, Federal Practice and Procedure § 3153, p. 533 (2d ed. 1997) ("[T]he court that adopted a local rule is the best judge of its meaning."). In the only discovered case addressing this issue within the District of New Jersey, Judge Irenas, in an unpublished opinion, disagreed with plaintiff's contention. *See Oberti v. Board of Educ.*, No. 91–2818, 1995 WL 428635 (D.N.J. July 17, 1995).[2]

> Rule [54.2][3] does not refer to the consequences of filing an appeal. Moreover, the filing of an appeal does not affect our jurisdiction to entertain a fee request. In the absence of express language in [Rule 54.2] tolling the period for filing fee applications upon the filing of an appeal, we understand the rule to require the submission of fee application within 30 days after judgment or order regardless of filing an appeal.

Id. at *3, n. 7.

Additionally, caselaw from other jurisdictions supports the decision of Judge Irenas. *See, e.g., Quick v. Peoples Bank,* 993 F.2d 793, 798–99 (11th Cir.1993) (affirming district court's denial of attorneys' fees because the request was not brought within the local rules time requirement); *Jackson v. Beard,* 828 F.2d 1077, 1078–79 (4th Cir.1987) (filing of post-judgment motions does not toll 20–day time period in which to request attorneys' fees); *Zentek Corp. v. Internal Revenue Serv.,* 596 F.Supp. 324, 326 (E.D.Mich.1984) (denying motion for attorneys' fees brought outside of 30 day local rule requirement). *But see Lynn v. West,* No. 99–00577, 2000 WL 1229752, at *2–*3 (M.D.N.C. Aug. 8, 2000) (requiring litigant who prevails at a district court to wait until resolution of the case on appeal before seeking costs; deciding not to address attorneys' fees specifically; but expressing, "When a party prevails at the district court level, the better view appears to be that the clock begins to run with entry of the primary judgment, regardless of whether post-trial motions are filed or appeal is taken.").

Plaintiff argues that he had an honest belief that he could wait until final decision on defendants' appeal under Local Rule 54.2 because there is no mention of appeal, whereas, "in striking contrast," Local Civil Rule 54.1, which deals with applications to the court for costs, specifies a 30–day time limit, "whether or not an appeal has been filed." *See* L. Civ. R. 54.1(a). "Plaintiff therefor understood that the difference in the phrasing of the two rules reflected the traditional understanding that a Notice of Appeal from a final decision divests the district court of power to adjudicate, including power to adjudicate a fee application." (Pl.'s Reply Br. at 3).

However, in early 1998, the time that plaintiff would have made this decision, the law was clear: a district court is not divested of jurisdiction to determine a fee application while the merits of a case are on appeal. *See Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 202, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988); *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 452 n. 15, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982); *Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers,* 855 F.2d 1080, 1089 (3d Cir.1988); *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 97 (3d Cir.1988); *Beckwith Mach. Co. v. Travelers Indem. Co.,* 815 F.2d 286, 291 n. 8 (3d Cir.1987); *West v. Keve,* 721 F.2d 91, 95 n. 5 (3d Cir.1983).

This court also finds the Advisory Committee Notes for the 1993 amendment to Federal Rule 54 persuasive. For this court to hold that the 30–day time requirement in Federal Rule 54 and Local Rule 54.2 allows for tolling while a party appeals

---

2. Plaintiff argues that he could not have known of Judge Irenas' unpublished opinion. The opinion, however, is available on electronic databases. Additionally, this court is not bound by Judge Irenas' decision, but finds its reasoning persuasive.

3. In *Oberti*, Judge Irenas was interpreting former General Rule 46. In 1997, "former General Rule 46 was carried over into the 1997 rules as L. Civ. R. 54.2." L. Civ. R. 54.2, cmt. 1.

a decision would defeat the rational behind the rules. A defendant would not know of the claim for attorneys' fees before filing the appeal, indeed the claim would not be filed until after the appeal. The fee issue would not be resolved shortly after trial; it would not be resolved until after the appeal, which can be years after the trial. Finally, appellate review of the merits of the case could not include a review of the fee requests because they would not exist until after an appellate review of the merits. For this court to construe Local Rule 54 in the manner that plaintiff suggests would defeat the rational behind the time requirement.

Accordingly, this court holds that an appeal of a district court's decision to the Third Circuit does not toll the 30–day time requirement in Local Rule 54.2.

Plaintiff was required by local rule to file his request for attorneys' fees for work performed before this court no later than February 14, 1998. He did not make this application until September 19, 2000, over two and one-half years later. As a result, this portion of plaintiff's application for attorneys' fees will be denied.

### B. Work Performed on the Appeal

■ For the reasons contained herein, plaintiff attorneys' fees for work performed on the appeal of this court's permanent injunction will be granted.

As an initial hurdle, plaintiff must demonstrate his status as a "prevailing party." To do this, he must demonstrate that he has received at least some relief on the merits of his claim. *Baumgartner v. Harrisburg Hous. Auth.,* 21 F.3d 541, 544 (3d Cir.1994) (quoting *Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)). "Obviously, a plaintiff who has received injunctive relief . . . has prevailed, at least in part." *Id.*

It is well-settled that a plaintiff does not automatically lose his prevailing party status when a court dismisses his appeal for

mootness. *Bagby v. Beal,* 606 F.2d 411, 414–15 (3d. Cir.1979); *see also Bishop v. Committee on Prof'l Ethics and Conduct,* 686 F.2d 1278, 1290–91 (8th Cir.1982); *Dahlem v. Board of Educ.,* 901 F.2d 1508, 1512 (10th Cir.1990). In *Bagby,* an employee sued for a violation of her procedural due process, and the district court ordered a hearing. 606 F.2d at 413. Before the Third Circuit reached a decision on the merits of the appeal, it dismissed the appeal as moot[4] and vacated the district court's judgment. *Id.* at 417. In deciding whether the plaintiff could still be a prevailing party, the court held that the focus of the prevailing party status:

focuses not on the substantive merits of the plaintiff's claims, but rather on the relief ultimately received by the plaintiff. Thus, a plaintiff is a "prevailing party" . . . if he essentially succeeds in obtaining the relief he seeks in his claims on the merits.

There is no question that [plaintiff] succeeded on her due process claims. The district court found in her favor and ordered that she be afforded a hearing. She already has received this hearing and no action taken by this court can change the fact that she has accomplished the objectives of (her) litigation. Thus [plaintiff] is a prevailing party under § 1988. This holding is not dependent on the correctness of the district court's decision on the merits. No future proceedings involving the merits of the controversy will change this result. . . .

*Id.* at 415.

Here, like in *Bagby,* the plaintiff did not lose his prevailing party status at the district court level. Despite the dismissal as moot of plaintiff's appeal, the merits of this controversy will never change. Plaintiff's period of parole has ended, and defendant no longer has any viable claim of a right or an obligation to disclose plaintiff's conviction to his employer. Plaintiff "essentially

---

4. The employee no longer worked for the employer. *Bagby,* 606 F.2d at 413.

succeed[ed] in obtaining the relief he [sought] in his claims on the merits," *see id.*, by defending the appeal filed by defendants.

Still, defendant argues that, while plaintiff may have maintained his prevailing party status in the district court, plaintiff did not prevail in the appeal to the Third Circuit because the Third Circuit did not reach the merits of the appeal. Thus, defendant contends, plaintiff is not entitled to attorneys' fees for the work done in arguing for the denial of defendants' appeal. In support of its contention, defendant cites *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 482, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990).[5]

In *Lewis*, the United States Supreme Court held that the issue, as presented over the seven years of litigation, had become moot when the federal law was amended, prior to the Eleventh Circuits ruling on the merits. *Id.* at 478–82, 110 S.Ct. 1249. The Court vacated the judgment of the Eleventh Circuit, but remanded the proceedings to the Eleventh Circuit to allow the parties to supplement the record, so that the parties would have a chance to show that the case contained other issues, which may not be moot. *Id.* at 482–83, 110 S.Ct. 1249. "Since the judgment below is vacated on the basis of an event that mooted the controversy before the Court of Appeals' judgment is-

sued, [the plaintiff] was not, at that stage, a 'prevailing party' as it must be to recover fees under § 1988." *Id.* at 483, 110 S.Ct. 1249 (citation omitted).

Here, defendants argue that one of the holdings of *Lewis* is that, where an issue becomes moot on appeal, there can be no award of attorneys' fees under § 1988 for the work done on the appeal. Thus, according to defendants, this court may not award plaintiff attorneys' fees for any of the legal work done to oppose defendants' appeal to the Third Circuit.

*Lewis* is distinguishable. The mooting of the initial Eleventh Circuit opinion resulted in plaintiff not winning the right to apply to the state agency. The plaintiff in *Lewis*, at that stage, was no longer a prevailing party, and would have to continue to litigate before the Eleventh Circuit to try to win the right to apply to the state agency. Unlike *Bagby*, the plaintiff in *Lewis* did not get the requested relief during the time period of the appeal. With the decision of the Eleventh Circuit no longer in place, the plaintiff in *Lewis* was in no better position than it had been at the start of the appeal. Thus, it was not clear whether plaintiff would ultimately receive the relief sought. The status of prevailing party could not yet be determined, and the award of attorneys' fees would have been improper.

**5.** In *Lewis*, the plaintiff sought declaratory and injunctive relief from the district court. *Id.* at 475, 110 S.Ct. 1249. The district court granted summary judgment to the plaintiff. *Id.* Subsequently, the state of Florida amended a relevant law, which made the issue moot. *Id.* The defendant moved to amend or alter the judgment, arguing that the challenged statutes were now moot. *Id.* The district court denied the defendant's motion, finding that the issue fell within the "capable of repetition, yet evading review" exception to the mootness doctrine. *Id.* The district court also denied, without explanation, the plaintiff's motion for attorney fees under § 1988. *Id.* at 475–76, 110 S.Ct. 1249.

Apparently, both parties appealed. *See id.* at 476, 110 S.Ct. 1249. By opinion dated September 22, 1987, the Eleventh Circuit af-

firmed the district court's judgment for the plaintiff, though on a theory that the mootness doctrine did not apply. *Id.* The Eleventh Circuit also remanded the issue of attorneys' fees back to the district court for an explanation of its denial to the plaintiffs. *Id.*

Prior to the Eleventh Circuit issuing its opinion and order, federal law was changed in a way that might effect the merits of the case. *Id.* The defendants filed a petition for rehearing with the Eleventh Circuit, arguing that the new federal law rendered the action moot. *Id.* After issuing its first opinion mentioned above, the Eleventh Circuit denied the petition for rehearing, but, without explanation, granted the plaintiff attorneys' fees for work done on appeal. *Id.* at 476–77, 110 S.Ct. 1249.

A review of the caselaw of § 1988 claims for attorneys' fees comports with this reading. As explained above, the focus is "on the relief ultimately received by the plaintiff." *See Bagby*, 606 F.2d at 415. It does not matter whether a plaintiff receives the relief by a judicial decree, as long as the plaintiff "essentially succeeds in obtaining the relief [sought] in [the] claims on the merits." *Id.* Here, by defending the permanent injunction on appeal, plaintiff succeeded in obtaining relief on the merits, i.e. plaintiff's employer was not notified of his conviction.

In *Sotomura v. County of Hawaii*, 679 F.2d 152, 152–53 (9th Cir.1982), the Ninth Circuit addressed a related issue. After the plaintiffs in *Sotomura* obtained a judgment in the district court, the defendants appealed. *Id.* at 152. The Ninth Circuit dismissed the appeal as untimely. *Id.* The plaintiffs sought attorneys' fees for work performed in connection with the appeal. *Id.* The Ninth Circuit held, "The [plaintiffs] are 'prevailing parties,' a prerequisite to such an award, even though they prevailed by obtaining dismissal of the appeal as untimely rather than affirmance on the merits." *Id.; see also Hastings v. Maine–Endwell Cent. Sch. Dist.*, 676 F.2d 893, 896–97 (2d. Cir.1982) ("We interpret [§ 1988] to authorize an award of fees to a party who has prevailed by means of a dismissal of the appeal as well as to one who has prevailed by affirmance.").

This court holds that a plaintiff may recover attorneys' fees incurred in defending a judgment on appeal where the appeal is subsequently dismissed as moot and the plaintiff essentially succeeds in obtaining relief on the merits by defending the appeal. Had plaintiff not defended the injunction issued by this court, defendants may have been entitled to a judgment by default. In order to protect his interest and to ensure that he received the benefit sought in this litigation, plaintiff was required to protect himself against an appeal. That the appeal was not decided before the issue became moot does not

make any less reasonable the need to expend attorneys' fees in arguing the appeal. Plaintiff obtained the relief he sought by filing this suit and by defending this court's injunction on appeal. Therefore, this portion of plaintiff's motion to recover attorneys' fees will be granted.

### C. The "Lodestar"

The threshold step in determining a reasonable fee is calculation of the lodestar, which is the product of the reasonable hourly rate and the number of hours reasonably expended. *City of Burlington v. Dague*, 505 U.S. 557, 559–60, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). A district court has broad discretion in determining the amount of the award and can adjust the award as necessary based on the facts of each case. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The fee applicant bears the burden of producing evidence that both the requested hourly rate and number of hours expended are reasonable. *Webb v. Board of Educ.*, 471 U.S. 234, 242, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985). Where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. *See Hensley*, 461 U.S. at 429, 432, 103 S.Ct. 1933.

#### 1. Reasonable Hourly Rate

As the first part of the lodestar equation, the Court must determine a "reasonable hourly rate" of compensation. Plaintiff requests the following rates for each of his counsel: William H. Buckman, Esq.: $285/hour; Frederic J. Gross, Esq.: $385/hour; and Susan E. Babb, Esq.: $220/hour. Plaintiff also request a rate of $90/hour for paralegal work and a rate of $220/hour for some of Mr. Gross' work billed at an associate's rate. Defendants contend that plaintiff has failed to demonstrate that these hourly rates are consis-

tent with prevailing market rates for civil rights litigation. Defendant also argues that the hourly rates are inappropriate because they were the hourly rates for Mr. Gross as of late 1998 and for Mr. Buckman as of May 1999 and because plaintiff has not demonstrated that his attorneys actually collect fees at these rates.

▇▇ A reasonable hourly rate is the market rate prevailing in the relevant legal community.[6] *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). When making this determination, "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990). Within these parameters, an attorney's usual billing rate frequently provides courts with "an efficient and fair short cut." *Student Pub. Interest Research Group of N.J., Inc. v. AT & T Bell Labs.,* 842 F.2d 1436, 1445 (3d Cir.1988) ("*SPIRG* "). A fee applicant bears the burden of producing "satisfactory evidence" that the requested rate is consistent with the prevailing market rate. *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Satisfactory evidence includes "evidence other than the attorney's own affidavits." *Holmes v. Millcreek Township Sch. Dist.,* 205 F.3d 583, 594 (3d Cir.2000). Ultimately, the determination of a reasonable hourly rate is within the sound discretion of the court.

▇▇ Defendants have objected to using the current billing rates of plaintiff's attorneys. Plaintiff argues that, under *Missouri v. Jenkins,* 491 U.S. 274, 283, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), and *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 923 n. 41 (3d Cir.1985), his attorneys are entitled to their current billing rate in order to compensate them for the delay in receiving payment.

The courts in this circuit can use one of two methods to adjust for a delay in payment to attorneys: (1) base the fee award on the current billing rate or (2) adjust a fee based on historical rates to reflect its present value. *Keenan v. City of Philadelphia,* 983 F.2d 459, 476 & n. 18 (3d Cir.1992); *Blum v. Witco Chem. Corp.,* 888 F.2d 975, 984 & n. 4 (3d Cir.1989). The Third Circuit appears to have expressed a preference for adjusting a fee based on historical rates. *See Keenan,* 983 F.2d at 476; *Blum,* 888 F.2d at 984. However, district courts in this circuit do award attorneys' fees based on the current billing rate. *See In re Unisys Corp. Retiree Med. Benefits ERISA Lit.,* 886 F.Supp. 445, 479 (E.D.Pa.1995); *Amico v. New Castle County,* 654 F.Supp. 982, 1003 (D.Del. 1987).

The prevailing party bears the burden of documenting a need to adjust for delay in payments. *See Keenan,* 983 F.2d at 476 (quoting *SPIRG,* 842 F.2d at 1453). The prevailing party should provide evidence of "the costs of receiving delayed payment fees," such as evidence of market interest rates and certification of loans and interest payments made on those loans. *Id.* at 476–77. The prevailing party must provide more than a mere assertion of the need. *Id.* at 477; *see also Zampino v. Supermarkets Gen. Corp.,* No. 90–7234, 1994 WL 470338, *3 (E.D.Pa. Aug. 31, 1994) ("The evidence should document the costs of recovering a delayed payment of fees. Plaintiff's counsel should, at a minimum, provide the Court with evidence of market interest rates or a certification of law firm loans and interest payments paid on those loans while the law firm awaited payment of fees." (citations omitted)).

---

**6.** Here, the parties did not discuss the relevant legal community. Thus, this court finds the relevant legal community is the District of

New Jersey. *See Public Interest Research Group v. Windall,* 51 F.3d 1179, 1186 (3d Cir.1995).

Here, plaintiff has merely asserted that, because of the delay, his attorneys are entitled to their current billing rate. However, there is no evidence of any costs in receiving a delayed payment. Thus, there is no proven need to adjust for delay in payment using either the current billing rate or the historical rate. Plaintiff's request for his attorneys' current billing rates will be denied.

### a. William Buckman, Esq.

■ The current billing rate of Mr. Buckman is $285/hour. While this was apparently raised in May 1999, neither party has submitted documentation on his rate prior to May 1999. As support for Mr. Buckman's rate, plaintiff has submitted the affidavits of attorneys James Katz and Lawrence S. Lustberg.

Mr. Katz has been an attorney in the state of New Jersey since 1981. (Katz Aff. ¶ 1). Mr. Katz's practice is primarily labor and employment with a variety of civil rights and constitutional litigation. (Katz Aff. ¶ 2). Mr. Katz states that an hourly rate within the range of $250 to $325 per hour is reasonable in New Jersey "for attorneys of similar skill, experience and reputation as Mr. Buckman." (Katz Aff. ¶ 5). "Mr. Buckman's billing rate of $285 per hour is well within the range of fees charged by attorneys of similar skill, reputation and experience." (Katz Aff. ¶ 6).

Mr. Lustberg has practiced law in New Jersey since the early to mid 1980s. (Lustberg Aff. ¶¶ 2–4). His primary practice areas are public interest law and criminal defense. (Lustberg Aff. ¶ 7). "Mr. Buckman's rate of $285 per hour is well within the acceptable range for an attorney of his level of achievement and ability." (Lustberg Aff. ¶ 14).

Mr. Buckman details his extensive litigation experience, including civil rights cases and the "Turnpike Cases" in New Jersey. (Buckman Decl. of 5/10/99 ¶¶ 19–28). In addition, by order dated June 30, 1999, New Jersey District Court Judge Joseph A. Greenaway, Jr., awarded attorneys' fees for work performed by Buckman at a rate of $285/hour. (Gross Reply Decl. (undated) ¶ 7).

This court finds, based on the submissions received and this court's independent knowledge and experience, that a rate of $285/hour represents a reasonable rate for an attorney in the District of New Jersey who possesses skill and experience equivalent to those demonstrated by Mr. Buckman. For work performed prior to May 1999, this court will use the rate of $250/hour, described as adequate in the Affidavit of Mr. Katz. (See Katz Aff. ¶ 5).

### b. Fredric J. Gross, Esq.

Mr. Gross' current billing rate is $385/hour. This rate was raised from $350/hour in September 1998. (Gross Decl. of 5/10/99 ¶ 48). As support for Mr. Gross's rate of compensation, plaintiff submitted the affidavits of attorneys Linda B. Kenney, Patricia Breuninger, and Noel C. Crowley.

Ms. Kenney has been a lawyer in the state of New Jersey for over twenty years. (Kenney Aff. ¶ 2). She specializes in employment law. (Kenney Aff. ¶¶ 3–5). She has substantial experience litigating employment and civil rights matters. (Kenney Aff. ¶ 10–11). She states that from her experience, few attorneys in New Jersey other than Mr. Gross "have comparable experience and expertise in litigating against governmental entities." (Kenney Aff. ¶ 14). Ms. Kenney bills her clients at a rate of $350/hour. (Kenney Aff. ¶ 18). She states that Mr. Gross' hourly rate of $385 is reasonable and "equivalent to, if not less than, other attorneys with similar qualifications and expertise." (Kenney Aff. ¶¶ 17–18).

Ms. Breuninger has been a lawyer in the state of New Jersey for over 25 years. (Breuninger Aff. ¶ 1). She specializes in labor and employment matters. (Breuninger Aff. ¶ 3). She speaks highly of Mr. Gross, referring to him as "one of the three or four best employment attorneys

in the state." (Breuninger Aff. ¶ 10). Ms. Breuninger bills her clients at a rate of $325/hour. (Breuninger Aff. ¶ 11). As President of the National Employee Lawyers Association of New Jersey, she is familiar with attorney billing rates and finds that Mr. Gross' rate is "well within the range of employment lawyers in this state especially considering the outstanding skill, experience and reputation enjoyed by Mr. Gross." (Breuninger Aff. ¶ 11).

Mr. Crowley has been an attorney for over 40 years and a member of the New Jersey bar for over 12 years. (Crowley Aff. ¶ 1). Mr. Crowley has collaborated with Mr. Gross on various occasions and knows Mr. Gross "to be an attorney of uncommon ability and judgment with vast experience and learning, particularly in matters relating to civil rights." (Crowley Aff. ¶ 2). Mr. Crowley finds Mr. Gross' rate of $385/hour "entirely reasonable, and as commensurate with the value of his professional services." (Crowley Aff. ¶ 3).

In addition to the affidavits, Mr. Gross has submitted several decisions of civil rights litigation in which he participated in New Jersey that tend to show that his current rate of $385/hour is entirely reasonable. (*See* Gross Decl. of 5/10/99 ¶¶ 58–61).

Having considered these submissions, the facts of this case, and this court's independent knowledge and experience, this court finds that the hourly rate of Mr. Gross represents a reasonable rate for an attorney in the District of New Jersey who possesses skill and experience equivalent to those demonstrated by Mr. Gross in this case. Accordingly, Mr. Gross will be entitled to an hourly fee of $350 for work completed prior to September 1998 and $385 for work completed during and subsequent to September 1998. He is also entitled to $200/hour for the work billed at an associates' rate within his firm. This rate is equal to the rate set for Ms. Babb, discussed below.

#### c. Susan E. Babb, Esq.

The requested hourly rate for Ms. Babb is $220. In Judge Greenaway's June 1999 order, plaintiff was awarded attorneys' fees for Mr. Babb's work at a rate of $200/hour. (Gross Reply Decl. (undated) ¶ 7). Ms. Babb's work is currently billed by Mr. Gross at a rate of $220/hour. (Gross Decl. of 5/10/99 ¶ 67). No affidavit was provided in support of this increased rate. Instead, Mr. Gross refers to an affidavit of Peter van Schaick that states, "[A]ssociates of at least five years experience are billed in the hourly range of $150 to $250 an hour." (Gross Decl. of 5/10/99 ¶ 51).

Having presented no other evidence and no reason why the decision of Judge Greenaway is inappropriate, this court finds that a rate of $200/hour represents a reasonable rate for an attorney in the District of New Jersey who possesses skill and experience equivalent to those of Ms. Babb.

#### d. Paralegal Work

Mr. Gross has also billed for work performed by a paralegal. Plaintiff has requested a fee of $90/hour. The only documentation in support of this fee was the Affidavit of Mr. Gross, stating that this is his firm's current billing rate for paralegals. (Gross Decl. of 5/10/99 ¶ 67). In addition, Mr. Gross discusses the Affidavit of Mr. van Schaick, discussed above, which states that paralegals are billed at a rate of $50/hour to $90/hour. (Gross Decl. of 5/10/99 ¶ 67). No justification is given for providing a premium rate to the paralegals of Mr. Gross' firm. Therefore, this court finds that a reasonable rate is the median, which is $70/hour.

#### 2. Reasonable Hours Expended

Having determined the reasonable hourly rates for the services of Attorneys Gross, Buckman, and Babb, the second half of the lodestar equation and the reasonable number of hours expended on the litigation must be considered.

The Supreme Court requires fee counsel to exercise "billing judgment." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). To reflect proper billing judgment, attorneys must exclude from their fee applications "hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. A prevailing party bears the burden of adequately documenting the appropriate number of hours. *Daggett v. Kimmelman*, 811 F.2d 793, 801 (3d Cir.1987). Adequate documentation includes

> some fairly definite information as to the hours devoted to various general activities, ... and the hours spent by various classes of attorneys.... However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney ... A fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed.

*Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir.1990) (internal quotation marks and citations omitted); *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933 (noting that "the general subject matter of time expenditures should be set out with sufficient particularity that the district court can assess time claimed for each activity"). A court should exclude time that is not adequately documented. *Hensley*, 461 U.S. at 433–34, 103 S.Ct. 1933.

The burden is on the party opposing a fee award to challenge the accuracy of a requested fee. *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 719 (3d Cir. 1989). In doing so, however, the Supreme Court has cautioned, "A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. Only a "thin line" may separate what constitutes a reasonable and unreasonable amount of time to spend on a client's case. *West Virginia Univ. Hosps., Inc. v. Casey*, 898 F.2d 357, 365 (3d Cir.1990). As "officers of the court," the court assumes that fee counsel exercise the "same level of billing judgment and sensitivity in fee-shifting situations as they do with their own private clients." *Id.* at 365.

Here, plaintiff has met his burden of documenting the hours spent on this litigation. Additionally, the declarations of Gross and Buckman make it clear that they have discounted their requests to prevent duplicative billing and to subtract time that they felt should not be billed to plaintiff. (Buckman Decl. of 5/10/99 ¶¶ 5–7; Gross Decl. of 5/10/99 ¶¶ 16, 19–23). Defendant has not challenged the accuracy of the number of hours for which plaintiff is requesting reimbursement. Thus, attorneys' fees for all hours requested for work done toward the appeal will be allowed.

### 3. Calculation of the Lodestar

Plaintiff requested Mr. Buckman's hourly rate for a total of 46.02 hours. (*See* Gross Reply Decl. (undated), Ex. 14). Of those 46.02 hours, 33.20 were expended on efforts in this matter prior to January 15, 1998. (*See* Buckman Decl. of 05/10/99, Ex. A). Thus, this court will allow plaintiff attorney's fees for 12.82 hours, the total number of hours recorded by Mr. Buckman after January 15, 1998. The rate for 12.22 of those hours is $250/hour. The rate for the remaining 0.6 hour is $285/hour. This yields a fee of $3,226.00.

Plaintiff requested Mr. Gross's hourly rate of $385 for a total of 124.4 hours, (*see* Gross Reply Decl. (undated), Ex. 14), but 26.8 of those hours were for work prior to January 15, 1998, (*see* Gross Decl. of 5/10/99, Ex. A). Thus, this court will allow plaintiff attorney's fees for 97.6 hours. Of those 97.6 hours, 50.3 hours are prior to September 1998, (*see* Gross Decl. of 5/10/99, Ex. A), and will, therefore, be billed at a rate of $350/hour. The remaining 47.3 hours are recoverable at a rate of $385/hour. Plaintiff is also allowed $200/hour for the 6.5 hours Mr. Gross billed at

an associate's rate. (*See* Gross Reply Decl. (undated), Ex. 14). This yields a fee of $37,115.50.

Plaintiff requested Ms. Babb's hourly rate for a total of 9.35 hours, all of which was for work completed after January 15, 1998. (*See* Gross Reply Decl. (undated), Ex. 14; Gross Decl. of 5/10/99, Ex. A). A rate of $200/hour yields a fee of $1,870.00.

Plaintiff requested payment for 6.70 hours of paralegal work. (*See* Gross Reply Decl. (undated), Ex. 14). All of this was for time spent on the appeal. The reasonable rate of $70/hour yields a fee of $469.00.

Together, these figures result in a lodestar of $42,680.50.

### D. Adjustment to the Lodestar

■ Although there is a strong presumption that the lodestar represents the reasonable fee for purposes of the fee award, the Supreme Court has recognized that some cases warrant an enhancement of the loadstar because the product of reasonable hours times reasonable rates results in a fee that is unreasonably low. *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The circumstances that warrant an upward adjustment are very limited, however, and the burden is on the fee applicant to prove by a preponderance of the evidence that an upward adjustment is necessary to establish a reasonable fee. *Blum,* 465 U.S. at 898, 104 S.Ct. 1541.

Plaintiff has not presented sufficient evidence to warrant an upward adjustment. His brief refers to the 12 factors from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), which should be used to determine a fee award.[7] He conclusively states that ten of those factors strongly favor a "generous award," but does not present any evidence by which to justify that conclusion. Instead of seeking an upward adjustment, plaintiff requested the current billing rate for each of his attorneys. As addressed above, the current billing rate was not justified by sufficient evidence. As plaintiff presented no other evidence by which to meet his burden of any upward adjustment, the presumption remains that the lodestar represents a reasonable fee.

### E. Costs

Under Local Civil Rule 54.1, plaintiff acknowledges that he was required to file for costs within 30 days of this court's issuance of the permanent injunction. (*See* Pl.'s Reply Br. at 2). Plaintiff has requested costs totaling $395.93. (*See* Gross Reply Decl. (undated), Ex. 14). The following costs, however, are not recoverable by plaintiff because they were incurred in the action before this court: (1) $5.46 for travel on 12/31/96; (2) $3.00 for faxing on 3/26/97; (3) $16.00 for faxing on 3/27/97; (4) $1.00 for travel on 4/4/97; and (5) $25.00 for courthouse courier to serve TRO. (*See* Gross Decl. of 5/10/99, Ex. A). Additionally, because plaintiff has not demonstrated the dates that the $90.63 charge for duplication of brief and the $138.68 charge for LEXIS were incurred, (*see* Gross Decl. of 5/10/99, Ex. A), they will not be allowed at this time. Upon plaintiff's submission, within 10 days of the date of this order, of an affidavit setting forth the dates that those charges were incurred, this court will amend this order to add the appropriate costs.

At this time, costs will be awarded to plaintiff for the remaining amount of $116.16.

---

**7.** Those factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) award in similar cases. *Johnson,* 488 F.2d at 717–19.

### III. CONCLUSION

For the reasons discussed above, plaintiff's motion for attorneys' fees for work performed at the district court level is denied. Plaintiff's motion for attorneys' fees for work performed at the appellate level is granted. The total amount of attorneys' fees awarded is $42,680.50. Plaintiff's motion for costs will be granted in the amount of $116.16, with leave to submit, within 10 days of the date of this order, an affidavit setting forth the dates that the above named charges were incurred.

An appropriate order will issue.

### ORDER

This matter having come before this court on plaintiff's motion for costs including attorneys' fees; and

For the reasons expressed in the opinion of this court issued even date;

IT IS ORDERED this _____ day of November, 2000 that plaintiff's motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 is hereby *GRANTED IN PART* and *DENIED IN PART* as follows:

1. Plaintiff is awarded $42,680.50 in reasonable attorneys' fees; and

2. Plaintiff is awarded costs in the amount of $116.16, without prejudice to the plaintiff's right to supplement the record, within ten (10) days from the date of this order, with evidence of dates of the duplication of brief and LEXIS fees as set forth above.